UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHICAGO BOARD OPTIONS EXCHANGE, INC., <br>     *Plaintiff*, <br> v. <br> INTERNATIONAL SECURITIES EXCHANGE, LLC <br>     *Defendant*. | Case No. 1:13-cv-01339 (JMF) |

**MEMORANDUM OF LAW IN SUPPORT OF INTERNATIONAL SECURITIES EXCHANGE, LLC'S MOTION TO STAY PROCEEDINGS**

**Table of Contents**

| | | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | FACTUAL BACKGROUND | 4 |
| III. | APPLICABLE LEGAL STANDARDS | 5 |
| IV. | ARGUMENT | 6 |
| | A. A Stay Will Simplify and Streamline the Instant Litigation | 6 |
| | B. A Stay is Warranted Because Discovery is at an Early Stage and No Trial Date Has Been Set | 7 |
| | C. A Stay Presents No Undue Prejudice or Tactical Disadvantage to Plaintiff | 8 |
| | D. A Stay Will Substantially Reduce the Burden on the Parties and on the Court | 11 |
| | E. This Motion to Stay Is Timely | 12 |
| V. | CONCLUSION | 14 |

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Lederer v. Newmatic Sound Sys.*,
  No. 10-CV-0271, 2011 WL 31189 (E.D.N.Y. Jan. 4, 2011) ................................................. 7, 10

*Liberty Mutual Ins. Co. v. Progressive Casualty Ins. Co.*,
  No. CBM2012–00011 (PTAB filed Feb. 25, 2013) ................................................................. 13

*Liberty Mutual Ins. Co. v. Progressive Casualty Ins. Co.*,
  No. CBM2013–00001 (PTAB filed Feb. 27, 2013) ................................................................. 13

*Liberty Mutual Ins. Co. v. Progressive Casualty Ins. Co.*,
  No. CBM2013–00003 (PTAB filed Mar. 15, 2013) ................................................................. 13

*Market-Alerts Pty. Ltd., v. Bloomberg Fin. L.P.*,
  No. 1:12-cv-00780-GMS, 2013 WL 443973 (D. Del. Feb. 5, 2013) ............................... 5, 8, 12

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
  No. 12-662-GMS, 2013 WL 3353984 (D. Del. Jan. 31, 2013) .................................................. 12

*Pac. Bioscience Labs., Inc. v. Pretika Corp.*,
  760 F. Supp. 2d 1061, 1064 (W.D. Wash. 2011) ....................................................................... 11

*Plasmart Inc. v. Wincell Int'l Inc.*,
  No. 05 Civ. 10745, 2008 WL 4107464 (S.D.N.Y. Sept. 2, 2008) ......................................... 8, 11

*Polaris Indus., Inc. v. BRP US Inc.*,
  No. 12-01405 AMD/SER, 2012 WL 5331227 (D. Minn. Oct, 29, 2012) .................................. 10

*Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*,
  No. 5:12-CV-3864-EJD, 2012 WL 6020012 (N.D.Cal. Dec. 3, 2012) ...................................... 10

*SAP America, Inc. v. Versata Development Group, Inc.*,
  No. CBM2012–00001 (PTAB filed June 11, 2003) .................................................................. 13

*Semiconductor Energy Lab. Co., Ltd. v. Chimei Innolux Corp.*,
  No. SACV 12-21, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012) .............................................. 12

*Sightsound Techs., LLC v. Apple, Inc.*,
  No. 11-1292, 2013 WL 2457284 (W.D. Pa. June 6, 2013) ............................................ 5, 6, 8, 12

*Softview Computer Prods. v. Haworth, Inc.*,
  No. 97 Civ. 8815, 2000 WL 1134471 (S.D.N.Y. Aug. 10, 2000) ..................................... 7, 8, 11

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
  277 F.R.D. 84, 89 (W.D.N.Y. 2011) ............................................................................................ 8

*Star Envirotech, Inc. v. Redline Detection, LLC*,
  No. SACV m12-01861, 2013 WL 1716068 (C.D. Cal. Apr. 3, 2013) ....................................... 12

**CONGRESSIONAL RECORD**

157 Cong. Rec. S1053 ............................................................................................................1, 2

157 Cong. Rec. S1363–64 ..........................................................................................................2

157 Cong. Rec. S1364 ................................................................................................................5

**STATUTES AND LAWS**

35 U.S.C. § 101 ..........................................................................................................................2

35 U.S.C. § 324(c) .....................................................................................................................9

35 U.S.C. § 326(a)(11) ...............................................................................................................9

American Invents Act § 18(b)(1) ...............................................................................................5

American Invents Act § 18(c)(2) .........................................................................................6, 11

Pub. L. 112–29, 125 Stat. 284 (2011) ........................................................................................1

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 30(b)(6) ..........................................................................................................3, 4

**OTHER**

Office Patent Trial Practice Guide, 77 Fed. Reg. 48669 (Aug. 14, 2012) .................................9

Defendant, International Securities Exchange, LLC ("ISE"), respectfully submits this memorandum of law in support of its motion to stay the instant action in view of ISE's petitions for covered business method ("CBM") patent review of U.S. Patent Nos. 7,356,498 ("the '498 patent"), 7,980,457 ("the '457 patent"), and 8,266,044 ("the '044 patent") (collectively "the patents-in-suit") filed with the Patent Trial and Appeal Board (the "PTAB") of the United States Patent and Trademark Office (the "PTO") on September 6, 2013. A supporting Declaration of Michael M. Murray (the "Murray Decl.") is submitted herewith and includes copies of each of the CBM petitions as Exhibits 1, 2, and 3, respectively. The Murray Declaration also includes as Exhibits 4, 5, and 6 the Declarations of Dr. Maureen O'Hara in support of the three CBM petitions.

On September 9, counsel for ISE provided copies of the CBM petitions to counsel for Plaintiff Chicago Board Options Exchange, Inc. ("CBOE"). CBOE's counsel was advised that this motion would be filed and asked if CBOE would join or oppose. As of the time of this filing, CBOE has not indicated whether or not it will oppose.

I.      PRELIMINARY STATEMENT

According to members of Congress, the CBM review program of the Leahy-Smith America Invents Act (the "AIA")[1] is directed at a specific type of improperly issued patent—business method patents—which "are issued for practices that have been in widespread use in the financial industry for years," but "[b]ecause of the nature of the financial services industry, those practices aren't identifiable by the PTO as prior art." 157 Cong. Rec. S1053. The CBM review program allows companies such as ISE, who are "the target of . . . frivolous business method patent lawsuits to go back to the PTO and demonstrate, with the appropriate prior art, that the

---

[1] The AIA was enacted September 16, 2011. Pub. L. 112–29, 125 Stat. 284 (2011).

patent shouldn't have been issued in the first place." *Id*.  In this way, these "bad patents can be knocked out in an efficient administrative proceeding, avoiding costly litigation." *Id*.

The three patents-in-suit asserted by CBOE against ISE in this action are *precisely* the type of patents that Congress intended to eliminate through the implementation of the CBM review program.  The patents-in-suit claim nothing more than the automation of well-known risk management methods practiced in the financial services industry for decades and, as such, are clearly invalid under 35 U.S.C. § 101 for covering an abstract idea.  *See* Murray Decl. Ex. 1 at 23-32, Ex. 2 at 25-32, and Ex. 3 at 21-29; Ex. 4 at ¶¶ 42-48; Ex. 5 at ¶¶ 42-45; Ex. 6 at ¶¶ 42-45.  These patents are also invalid based on ISE's own prior art, as well as other prior art published long before the patents-in-suit were filed.  *See* Murray Decl. Ex. 1 at 32-56, Ex. 2 at 33-47, and Ex. 3 at 29-43; Ex. 4 at ¶¶ 49-81; Ex. 5 at ¶¶ 46-58; Ex. 6 at ¶¶ 46-61.

Given the tenuous nature of covered business method patents in general, as well as the high likelihood of invalidation of such patents, Congress has made clear that stays of litigation should be routinely granted pending the outcome of CBM reviews.  In this regard, Congress has codified a "four-factor test for the granting of a stay . . . [which] places a *very heavy thumb* on the scale in favor of the stay." 157 Cong. Rec. S1053 (emphasis added).  Indeed, according to members of Congress "it is nearly impossible to imagine a scenario in which a district court would not issue a stay." *Id*.  "It is congressional intent that a stay should only be denied in extremely rare instances" and that denial of a stay would require "an extraordinary and extremely rare set of circumstances not contemplated in any of the existing case law related to stays pending reexamination." *Id*. at S1363–64.

Here, all four factors, i.e., (1) potential to simplify issues, (2) stage of the proceedings, (3) potential prejudice, and (4) reduction of burden on the court and parties, weigh heavily in favor

of granting this motion. First, a stay will simplify and streamline issues. If, as ISE expects, all three patents-in-suit are found to be invalid business method patents, there will be no issues left for this Court to resolve. Even if the PTAB upholds the validity of one or more claims, the invalidation of at least some (or even one) of the asserted claims would substantially reduce the issues for this Court to resolve, such as claim construction and invalidity, and result in reduced cost and complexity of the litigation, more focused discovery, and a streamlining of arguments and defenses.

A stay is also warranted because the instant litigation is still in an early stage. Document discovery is far from complete, and only a single 30(b)(6) deposition has been conducted. Claim construction has not been briefed by the parties or ruled upon by the Court, expert discovery is more than half a year away, no dispositive motions have been filed or decided, and no trial date has been set.

A stay would also not unduly prejudice CBOE, which waited more than four years from the time its earliest patent issued to the time it finally initiated suit in late 2012, despite the fact that the accused product had been known to CBOE and implemented by ISE years earlier. CBOE has thus effectively conceded that money damages are sufficient for any infringement.

Finally, a stay would prevent the parties and the Court from investing needless time, energy, and resources on discovery, claim construction, and trial. For example, the parties are on the brink of collecting and producing millions of pages of electronically stored documents at enormous expense. Since the pending CBM petitions will likely result in cancellation of CBOE's patents, any effort expended now by the Court and the parties on discovery, claim construction and related issues could be a wasted effort.

Accordingly, in the interests of efficiency and in order to allow the PTAB to determine substantial and potentially dispositive issues of invalidity, ISE respectfully requests that the Court grant its motion to stay the present action, as Congress intended when it created the CBM procedure at the PTAB.

## II.     FACTUAL BACKGROUND

CBOE filed this case in the Northern District of Illinois on November 11, 2012, alleging ISE infringes the patents-in-suit, which are all entitled "Automated Trading Exchange System Having Integrated Quote Risk Monitoring and Integrated Quote Modification Services." (Dkt. No. 1.)  On January 4, 2013, ISE filed its answer and counterclaims and moved to transfer the action to the Southern District of New York. (Dkt. Nos. 24 & 25.) On February 20, 2013, ISE's motion to transfer was granted. (Dkt. No. 52.)

Around mid-January 2013, ISE retained Crown Point Advisors to perform a search of prior art related to the patents-in-suit, which primarily focused on locating earlier U.S. Patents. Murray Decl. at ¶ 4.  Crown Point Advisors uncovered approximately forty prior art references, reporting the results to ISE in March 2013.  *Id*. at ¶ 5.  ISE also commissioned a search by Article One Partners ("Article One").  *Id*. at ¶¶ 3, 6.  Article One utilizes a global, crowd sourcing based search process to identify non-traditional prior art, including "non-English language and obscure prior art, undiscoverable by traditional electronic search."  *Id*.  Article One's search was substantially completed in early August 2013, and uncovered hundreds of references.  *Id*. at ¶ 7.  ISE prepared and filed the petitions for CBM review about one month after receiving the complete search results from Article One.  *Id*. at ¶ 8.

This action is still at an early stage—no dispositive motions have been filed and fact discovery is far from complete.  As of the date of this filing, the parties have exchanged and responded to only a limited set of interrogatories and requests for the production of documents;

only a single 30(b)(6) deposition has been conducted; claim construction briefing has not begun, and no trial date has been set.

### III.    APPLICABLE LEGAL STANDARDS

Section 18 of the AIA provides that in deciding whether to enter a stay pending CBM review, a court should consider the following four factors:

> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
>
> (B) whether discovery is complete and whether a trial date has been set;
>
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
>
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b)(1).

Although judicial decisions considering a motion to stay pending CBM review "are virtually nonexistent" due to the fact that the relevant AIA provisions dealing with CBM petitions went into effect less than a year ago, decisions from the ordinary reexamination context are instructive. *See Market-Alerts Pty. Ltd., v. Bloomberg Fin. L.P.*, No. 1:12-cv-00780-GMS, 2013 WL 443973, at *2 n.6 (D. Del. Feb. 5, 2013). The major difference between the CBM review stay analysis and that commonly applied by courts in deciding motions to stay pending *inter partes* or *ex parte* reexamination is the inclusion of the fourth factor in the CBM context. In emphasizing the importance of this particular factor, Senator Charles Schumer explained, "too many district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two fora at the same time. This is unacceptable, and would be contrary to the fundamental purpose of [this] amendment to provide a cost-efficient alternative to litigation." 157 Cong. Rec. S1364. Indeed, it has been suggested that this

fourth factor "was enacted in order to increase the likelihood that a stay would be granted." *Sightsound Techs.*, 2013 WL 2457284 at *3 (citation omitted); *see also Market-Alerts Pty.*, 2013 WL 443973, at *6 ("It appears the intent of this provision was to ensure that district courts would grant stays pending CBM review proceedings at a higher rate than they have allowed stays pending *ex parte* reexaminations.").

IV.   ARGUMENT

    A.   A Stay Will Simplify and Streamline the Instant Litigation

The first factor, i.e., "whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial," strongly favors a stay. AIA § 18(c)(2). In general, a stay pending CBM review can simplify and streamline the issues for trial in the following ways:

> (1) all prior art presented to the trial court will have been considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if the patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the administrative review may encourage settlement without further involvement of the court, (5) the record of the administrative review would probably be entered at trial, reducing the complexity and length of litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences.

*Sightsound Techs., LLC v. Apple, Inc.*, No. 11-1292, 2013 WL 2457284, at *1-2 (W.D. Pa. June 6, 2013) (citation and quotation marks omitted). As one district court recently noted, "[p]arallel proceedings involving the same patents, with potentially different outcomes, are not particularly desirable. Allowing one to conclude . . . is *always* likely to streamline the other." *Id.* at *2 (emphasis added).

Here, a stay of the instant litigation will allow the parties and the Court to realize all of the advantages listed above.[2] If, as ISE expects, the PTAB invalidates all of the asserted claims,

---

[2] ISE notes that not "all" of the available prior art will be submitted to the PTAB in this case. However, ISE has submitted the most relevant prior art of which it is currently aware, and based

6

there will be no issues left to litigate before this Court. A stay would eliminate completely the risk of the Court and the parties needlessly expending time and resources litigating and construing invalid claims. Even if some of the asserted claims ultimately survive the CBM review process, a stay would still simplify and streamline the issues left for trial by allowing the parties and this Court to focus on only the surviving claims and issues.

A stay would also likely encourage the parties to engage in earlier and potentially more fruitful settlement discussions either during or after the completion of the CBM review proceedings, and allow the full record of the administrative review to be made available to this Court. *See, e.g., Lederer v. Newmatic Sound Sys., Inc.*, No. 10-CV-0271, 2011 WL 31189, at *3 (E.D.N.Y. Jan. 4, 2011) (recognizing that the PTAB "has particular expertise in evaluating patentability, and its [review] will help the Court understand the issues and, should the [PTAB] invalidate some of Plaintiff's claims, reduce the length and complexity of this litigation."); *see also Softview Computer Prods. v. Haworth, Inc.* No. 97 Civ. 8815, 2000 WL 1134471, at *3 (S.D.N.Y. Aug. 10, 2000) (recognizing that "the Court will . . . have the benefit of the [PTAB's] expert analysis of the prior art that allegedly invalidates or limits the claims."). Accordingly, this factor weighs strongly in favor of granting the motion to stay.

      **B.**    **A Stay is Warranted Because Discovery is at an Early Stage and No Trial Date Has Been Set**

The second factor, i.e., "whether discovery is complete and whether a trial date has been set," also weighs heavily in favor of a stay. The instant action is still at an early stage. Claim construction has not been briefed or ruled upon; only a single 30(b)(6) deposition has been conducted; expert discovery has not begun; no dispositive motions have been filed by the parties or decided by the Court; and no trial date has been set. (Dkt. No. 68.) Further, document

---

on its present understanding of the claims. ISE reserves the right to submit additional prior art to the Court as circumstances warrant.

discovery is far from complete. Murray Decl. at ¶ 12. The parties are still negotiating an initial set of ESI terms to search for relevant documents. *Id*. Courts routinely grant stays in such circumstances, and even in cases that have progressed substantially further than the instant action. *See, e.g., Sightsound Techs.*, 2013 WL 2457284 (granting stay where "litigation ha[d] reached a relatively late stage" and claim construction had already occurred); *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 277 F.R.D. 84, 89 (W.D.N.Y. 2011) (granting stay where document discovery had been undertaken, but no other fact discovery had occurred, claim construction hearing had not been scheduled or conducted, and no trial date had been set); *Plasmart Inc. v. Wincell Int'l Inc.*, No. 05 Civ. 10745(PKC), 2008 WL 4107464, at *1 (S.D.N.Y. Sept. 2, 2008) (granting stay where discovery was complete and court had already engaged in claim construction); *Softview Computer Prods.*, 2000 WL 1134471, at *3 (granting stay where discovery was underway, but not yet completed, summary judgment motions had been served, claim construction hearing had not been held, and pretrial order not yet prepared).

Because this case is still at an early stage and there is a substantial amount of work to be done both by the parties and by the Court before the instant action will be ready for trial, this factor weighs heavily in favor of granting the stay.

### C.  A Stay Presents No Undue Prejudice or Tactical Disadvantage to Plaintiff

The third factor, i.e., "whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party," also weighs heavily in favor of a stay. In determining whether a plaintiff will be *unduly* prejudiced by a stay, courts consider factors such as (1) the timing of the motion to stay; (2) the timing of the administrative review request; (3) the status of the review proceedings; and (4) the relationship between the parties. *See Market-Alerts Pty.*, 2013 WL 443973, at *5.

Here, neither the timing of the motion to stay nor the timing of the CBM review petition suggests that ISE has an improper dilatory motive or is seeking to gain a tactical advantage. After CBOE commenced this action, ISE immediately moved for transfer to the Southern District of New York and began a comprehensive prior art search. Murray Decl. at ¶ 2. The prior art search involved two separate research firms to encompass both traditional and non-traditional prior art from around the world. *Id*. at ¶ 3. These searches, which did not complete until early August 2013, uncovered several hundred prior art references, each of which ISE then analyzed. *Id*. at ¶¶ 4-7. ISE prepared and filed the CBM petitions and the instant motion to stay one month after the searches completed.

It would have been impractical for ISE to have filed the CBM petitions (or this motion to stay) any earlier. A party has but a single chance to request CBM review of a patent. *See* Office Patent Trial Practice Guide, 77 Fed. Reg. 48669, 48759 (Aug. 14, 2012) (explaining that the PTO will apply statutory estoppel provisions and traditional common law principles to "protect patent owners from harassment via successive petitions by the same or related parties, to prevent parties from having a 'second bite at the apple,' and to protect the integrity of the USPTO and Federal Courts by assuring that all issues are promptly raised and vetted."). Thus, ISE properly waited until its prior art searching was complete so that it could select the appropriate references for the CBM petitions.

Further, although the CBM review process is in an early stage, there is an extremely high likelihood that the CBM petitions will be granted and proceed to trial before the PTAB. *See*

*infra* § IV.E.  The early stage of the CBM is also counterbalanced by the tightly circumscribed timeline for CBM review,[3] and the fact that the instant litigation is also at an early stage.

As to the relationship between the parties, although ISE and CBOE are competitors, any claim by CBOE that a delay in these proceedings would cause it undue prejudice would be undercut by CBOE's own actions, which demonstrate a clear lack of urgency.  CBOE has undoubtedly been aware that ISE, a direct competitor, began offering the accused functionality to its customers beginning in 2000.  Despite this, CBOE waited until 2012 to file the instant lawsuit—more than four years after the earliest of the patents-in-suit issued in 2008.  Nor has CBOE sought a preliminary injunction or an expedited discovery schedule.

In instances in which courts have ruled that a stay would prejudice a direct competitor patent owner, they have done so only when the stay would result in an unquantifiable harm that could not be compensated for adequately by monetary damages.  *See, e.g., Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. 5:12-CV-3864-EJD, 2012 WL 6020012 (N.D.Cal. Dec. 3, 2012) (finding no prejudice where parties were direct competitors because "[s]hould infringement ultimately be found in this case, money damages will adequately compensate Plaintiff for any lost licensing revenues"); *Polaris Indus., Inc. v. BRP US Inc.*, No. 12-01405 AMD/SER, 2012 WL 5331227 (D. Minn. Oct, 29, 2012) (finding no undue prejudice where plaintiff "has not offered any evidence that a stay will unduly harm its position in the marketplace" and "[i]f [plaintiff] is entitled to damages for loss of market share from [defendant], those damages will continue to accrue during the stay of this litigation"); *Lederer*,

---

[3] Pursuant to the PTO's regulations, the PTAB has up to three months from the filing of CBOE's preliminary response to ISE's petitions to decide whether to institute trial.  35 U.S.C. § 324(c). The PTAB must issue a final decision within one-year of instituting the trial, or within eighteen months if good cause is shown.  35 U.S.C. § 326(a)(11).

2011 WL 31189 ("[T]he prejudice Plaintiff suffers as a result of Defendant's continued alleged infringement while the case is stayed can be cured by a damages award that compensates Plaintiff for this additional infringement should he ultimately prevail."). In this case, CBOE's complaint seeks monetary damages for past infringement and sets forth the precise (albeit grossly inflated) dollar amount of $525,000,000. (Dkt. No. 1, Prayer for Relief.).

In sum, ISE has no improper or dilatory motive for seeking to stay the instant litigation and CBOE will not suffer any undue prejudice or tactical disadvantage if the stay is granted. In the unlikely event that the patents-in-suit survive CBM review and CBOE prevails at trial, CBOE can be adequately compensated with monetary damages. This factor thus weighs in favor of granting a stay.

### D.  A Stay Will Substantially Reduce the Burden on the Parties and on the Court

The fourth factor, i.e., "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court," also weighs heavily in favor of a stay. AIA § 18(c)(2). A stay will spare the parties the burden of simultaneously litigating the validity of the patents-in-suit in this Court and the PTAB, and will obviate the need for the Court and the parties to invest time, energy, and resources on discovery, claim construction, and trial of patent claims that are likely to be ultimately canceled or narrowed by the CBM review. *See Softview Computer Prods.*, 2000 WL 1134471, at *3 ("[I]f the parties continue to litigate the validity of the claims in this Court, and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court will have wasted time and the parties will have spent additional funds addressing an invalid claim or claims."). At a minimum, a CBM review will provide an important intrinsic record of evidence for the Court when deciding critical issues of the case, such as claim construction and dispositive motions. *See, e.g., Pac. Bioscience Labs., Inc. v. Pretika Corp.*, 760 F. Supp. 2d 1061, 1064 (W.D. Wash. 2011) ("Even if some or all of the claims are confirmed,

11

the court would still have the benefit of the USPTO's analysis of the disputed claim terms in ruling on claim construction."); *Plasmart Inc.*, 2008 WL 4107464, at *3 ("The PTO has particular expertise in evaluating patentability and reexamination will help the Court understand the issues[.]").

The need for a stay is particularly acute here as the parties are on the brink of expending an enormous amount of time and resources conducting fact discovery. The parties are currently negotiating search terms for electronically stored information and each is running preliminary searches of its own documents. Using these proposed search terms, millions of pages of potentially responsive documents have been identified and more may be identified as refinement of the terms continues. Murray Dec., at ¶ 13. These documents will need to be collected, hosted, produced, and reviewed in the coming months at great expense to both parties. Fact discovery is scheduled to be completed by March 10, 2014, and will include approximately 28 depositions. (Dkt. No. 68.) Much, if not all, of this discovery would be unnecessary in the event that the PTAB invalidates or amends the asserted claims.

Since a stay will undeniably reduce the burden of litigation on both this Court and the parties, this factor weighs heavily in favor of granting the stay.

### E.   This Motion to Stay Is Timely

The fact that the PTAB has not yet granted the CBM petition does not weigh against granting the stay. Courts routinely grant stays prior to the PTO's decision on whether to institute administrative review. *See, e.g., Market-Alerts Pty.*, 2013 WL 443973 (granting stay before CBM review was granted); *Sightsound Techs.*, 2013 WL 2457284 (same); *Star Envirotech, Inc. v. Redline Detection, LLC*, No. SACV m12-01861, 2013 WL 1716068 (C.D. Cal. Apr. 3, 2013) (granting stay before *inter partes* review was granted); *Semiconductor Energy Lab. Co., Ltd. v. Chimei Innolux Corp.*, No. SACV 12-21, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012) (same);

*Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-662-GMS, 2013 WL 3353984 (D. Del. Jan. 31, 2013) (same). In fact, it has been suggested that the statutory stay analysis set forth in the AIA applies when the petition is filed, not when the PTO institutes review. *See Market-Alerts Pty.*, 2013 WL 443973, at *2 n.5 (explaining that the AIA stay analysis applies when a party seeks a stay "relating to a transitional *proceeding*" and the Office Patent Trial Practice Guide states that "the *proceedings* begin with the filing of a petition") (emphasis in original); *Sightsound Techs.*, 2013 WL 2457284 at *3 (adopting conclusion from *Market-Alerts Pty.*). As such, the fact that CBM review of the patents-in-suit has not yet been instituted does not weigh against granting the stay.

In addition, given the strength of ISE's arguments in the petitions and the PTAB's record in granting CBM petitions, it is a near certainty that the PTAB will proceed to trial on all three of the patents-in-suit. As of July 31, 2013, the PTAB has ruled on fifteen CBM petitions, granting all but three. *See* Murray Decl. Ex. 7 (PTAB AIA Progress). Furthermore, all three of the denied CBM petitions were denied because they were duplicative of another petition filed by the same petitioner on the same day for the same patent, and the PTAB did institute a review based upon the other petition. *Liberty Mutual Ins. Co. v. Progressive Cas. Ins. Co.*, No. CBM2012–00011, at 33–34 (PTAB filed Feb. 25, 2013) (Paper 12) (noting concurrent review allowed for same patent); *Liberty Mutual Ins. Co. v. Progressive Cas. Ins. Co.*, No. CBM2013–00001, at 34 n.8 (PTAB filed Feb. 27, 2013) (paper 13) (same); *Liberty Mutual Ins. Co. v. Progressive Cas. Ins. Co.*, No. CBM2013–00003, at 24 (PTAB filed Mar. 15, 2013) (Paper 13) (same). *Thus, the PTAB has instituted a trial for every CBM patent for which review has been sought so far, i.e.,*

*100% of the time.*[4]  ISE's CBM petitions, which have multiple strong grounds for invalidity, are not likely to be the first such petitions denied.  *See* Murray Decl. Exs. 1, 2, and 3.

## V. CONCLUSION

It is a near certainty that the PTAB will institute a CBM review of all three patents-in-suit, and many, if not all, of the claims will likely be cancelled.  Any claims that do survive the PTAB review may be amended or, at the very least, will have the differences between the claims and the prior art clarified.  Accordingly, ISE respectfully requests that this litigation be stayed to avoid needless expense to the parties and to conserve judicial resources, precisely as Congress intended when creating the CBM review procedure.


Dated: September 11, 2013

/s/ Michael M. Murray
Michael M. Murray
Bryan N. DeMatteo
Rachel H. Kaufman
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
mmurray@winston.com
bdematteo@winston.com
rkaufman@winston.com

Joshua Wyde
WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor
Houston, Texas 77002
jwyde@winston.com

---

[4] Additionally, the PTAB has demonstrated a willingness to strike down claims previously issued by the agency by cancelling all the claims at issue in the only CBM patent review to proceed to a final written opinion so far.  *See SAP America, Inc. v. Versata Dev. Group, Inc.*, No. CBM2012–00001 (PTAB filed June 11, 2003) (Paper 70) (holding patentee's claims unpatentable under 35 U.S.C. § 101).

*Attorneys for Defendant International Securities Exchange, LLC*

Case 1:13-cv-01339-JMF   Document 74   Filed 09/11/13   Page 19 of 19